Please proceed when you're ready. Thank you. Good morning, your honors. May it please the court. My name is Michelle Riggs. I represent the plaintiffs and a college in this case, Larry Claro. We are here today to ask you to reverse the finding of the trial court. We believe that it was improper for the jury to find in favor of the defendant in this case. And furthermore, it was improper for the trial court to fail to order a new trial in this case solely on the issue of damages and for failure to direct the verdict in favor of the plaintiff and also fail to grant our motion for judgment notwithstanding the verdict. So this is an auto accident case, as I'm sure you've been able to surmise from reading our briefs and all the facts in the case. It happened in January of 2013. It's a pretty straightforward case in terms of the facts. It was a rear-end auto accident, and there was simply put no evidence put on by the defense that my client was contributorily negligent in causing the accident to occur. The defendant actually admitted liability at the time of trial. Okay, did he admit liability or just negligence? I mean, and I've seen it both ways, but I mean, was a document filed that said defendant admits liability? At the time of trial, Your Honor, defendant basically stipulated that she was negligent in causing the accident to occur. So the jury was given the proximate cause instruction. And I think the key issue in this case where we take issue is that the jury was given the option to sign the defendant's verdict form C, which basically says, and it's in my appendix to my brief, we find in favor of the defendant and against the plaintiff in this case. Let me ask a question there. Did you object to the submission of that verdict form? We did, Your Honor. We did. And Judge Lopino allowed that verdict form in over our objection. So I'd like to talk to you about the facts of the case and how I think that the case that needs to be applied here, which I talked about extensively in my brief, is the Wiggins case, which is a very recent case that this court actually decided. So my client was rear ended in this accident and there was no evidence, as I mentioned, that he was contributorily negligent in causing the accident to occur. The defendant testified that she struck my client at a lower rate of speed than he claimed he was struck at. But that was essentially the only dispute as to how the accident occurred. And my client, he's an auto mechanic. He's worked, I think, since ninth grade. He was taken out of school by his dad. So he testified that he thought he would be fine after the accident. But as time went on, he wasn't getting better. He went to a chiropractor 33 days after the accident occurred. So he goes to a chiropractor. The chiropractor, Dr. Fisher, who testified live at trial, said yes. He took the history of the injury. He noted that my client was suffering from right shoulder and neck pain. He said, yes, I believe this is causally related to the auto accident that he was involved in. He's had no prior history of right shoulder or neck problems before. So all of that testimony was taken at trial. I questioned Dr. Fisher at the time of trial. All of that came in. No rebuttal evidence from the defendant at all in terms of medical testimony. We also had Dr. Matthew Warnett, who's a board certified orthopedic spine surgeon, who testified by video evidence deposition in this case. He testified consistently with Dr. Fisher that my client presented to him, gave him the history of the car accident. No prior neck or shoulder problems before this accident occurred. Dr. Fisher did an MRI, recommended several injections, which were done, discovered two herniated discs on the MRI. Unequivocally testified, yes, I believe that his symptoms and those MRIs were caused by this car accident. My client testified at trial consistently with that. No, never had any prior problems with my neck or my shoulder before. I did have a herniated disc in my back 13 years ago, but I didn't hurt my back in this accident. So that was undisputed. Again, no prior, no, excuse me, contrary medical evidence submitted by the defendant at the time of trial. And also no prior medical records about where this prior herniated disc was located. Is that right? That's correct, Your Honor. The only real mention of this herniated disc, in fact, is actually, as I'm sure you're aware, because I'm sure that's why you asked me, is Dr. Fisher's first note from when he sees my client. He says, my client reports prior herniated disc. And Dr. Fisher testified at trial, yeah, I talked to him about it, and that was from his back. Low back. Low back. I knew that. And there was some sort of insinuation, I think, from defense counsel at the time of trial that Dr. Fisher could never have recalled this and that we somehow coached him in that regard to say that, but there's absolutely no evidence to support that whatsoever. So in addition to Dr. Fisher giving that testimony, also the plaintiff testified, yes, I had a prior herniated disc, but that was in my low back. Correct, Your Honor. Plaintiff also testified, yes, I had a prior herniated disc in my low back. I treated conservatively for it, and by the way, it didn't injure my back in this accident. It's only my neck and my right shoulder. And counsel, on this point that Judge Stewart was making about admission of negligence or liability, the jury did hear the evidence in regard to the actual accident about how fast the cars were going, the points of impact. And the jury heard all that, so they had evidence regarding the actual accident. They did. We actually, given that liability was admitted for the accident in terms of the defendant admitting she was negligent for causing the accident to occur, we actually asked Judge Lopeno that the defendant not be allowed to testify, but that request was denied. So she did testify about the impact and the speed of the impact. But what's significant about that, I think, is that there's no medical testimony that hinges on that fact, and I think that that's another reason why the jury's decision was improper in this case, because neither Dr. Fisher nor Dr. Gornett ever testified that the speed at which the accident occurred was a basis for their opinion that my client's condition was causally related to the auto accident. Did the defendant's version of the accident contradict the plaintiff's version? Was that evidence of dispute? I mean, they hit each other, but as far as the other specifics of it, were there disputes as to the evidence? There were some minor discrepancies, I would say, Your Honor. What the defendant testified to was that she claimed her brakes malfunctioned, which was the reason why she, I think she used the word, rolled forward and struck the rear of my client's vehicle and then testified to the speed of the accident. My client said, I don't think she's right about the speed of the accident. And there were some other minor discrepancies about her claiming that my client was pulled off to the side of the road smoking a cigarette and my client says he never smoked before. So other minor discrepancies that the jury heard, yes, with regard to how the accident occurred. But I don't think that's significant in this case. I think what's significant is the testimony that's remained consistent for the plaintiff throughout the entire trial, which was that she hit him, he developed problems after the accident happened, he never had prior problems that were similar to this, and we had two experts testify of that fact. So that actually leads me into how this case is so similar to the Wiggins case that Justice Goldenhurst, you actually offered the opinion on very recently. So that case is very similar to this, and I think that the court should carefully consider that and actually render the same finding in this case. So in that case, the plaintiff was struck by the defendant. How the accident occurred in that case was a little bit different. The plaintiff was actually struck by somebody who was making an improper left turn in front of her, as opposed to my client being rear-ended. So the plaintiff in that case was actually a very young girl. She was very active. She was an athlete. And she actually waited, I think the record indicated, 87 days before she sought medical care and treatment. There was no evidence in that case that the plaintiff was contributorily negligent in any way, causing the accident to occur. And the jury in that case rendered a general verdict in favor of the defendant in that case, which is exactly what the jury did here. They signed the defendant's verdict form C, finding in favor of the defendant and against my client. And the problem with that, that you said in that opinion, is that when the jury signs a general verdict form for the defense, we have no idea why the jury made that decision. That basically gives us no indication of why that verdict was rendered. And in that case, because of that, you said, because the record before us is clear that defendant's negligence was the proximate cause of the accident and plaintiff was not contributorily negligent, the instant case must be reversed and remanded with directions to enter judgment in favor of plaintiff on the issue of liability and to hold a new trial on the issue of plaintiff's damages only. So I think that that's the appropriate remedy here for the plaintiff. I don't think that the defense should have been allowed to submit a verdict form that stated that the verdict should be that they were finding in favor of the defendant and against my client because negligence had been admitted and there was no contrary evidence submitted by the defense that this accident did not cause my client's injuries. What did the trial judge say at the time he denied the motion for directed verdict? I mean, what was his reasoning? Judge Lopenos stated that at the current time he was going to deny our motion, but based on what the jury found, he may revisit that issue. That's basically what he said. And then kind of the frustrating part for me was when we submitted our post-trial motions, he basically just offered a very, very short one or two-sentence order saying that our post-trial motions were denied, giving no indication as to why they were denied. So I really don't know, but I do think that the verdict should have been directed in favor of the plaintiff at the time that the evidence was submitted to the jury, and they should have been given one verdict form. They should have been given our verdict form A, which allotted for all of the different damages that a jury can award to a plaintiff. And that would have been the appropriate thing for them to do, because if they found that my client didn't sustain any injuries as a result of the accident or they didn't necessarily believe him that he was hurt, they could have put zeros on those different spots. That would have given us a reason as to why they made their decision, but that wasn't done. And that was the problem, I think, one of the issues that you saw in the Wiggins case, is that when there's a general verdict form, we just simply don't know. And in that case, you also said about jury instructions, an instruction is only justified if it is supported by some evidence in the record. There was no evidence in the record that was submitted that should have given the jury the option to find for the defendant in this case, simply put. So, I'm sorry, was somebody going to ask a question? No, I thought I heard somebody motioning. Well, we're just breathing. We have case law, and I can't think of the name of the case right now, but it came out of this court and went to the Supreme Court, and we were affirmed, or whatever, that says if a defendant claims there was some other cause for the plaintiff's injury, they have to put in medical evidence of that. I can't think of the name of the case right now. Justice Goldmeier will probably think of it in a minute. So was that, I mean, here, no contrary evidence was presented, no prior medical records showing that he did have any prior herniated discs in his neck were presented. So the jury is just left to speculate about whether there might be some other cause. Right, Your Honor. And, again, going back to the Wiggins case, I think that there's a really nice paragraph that kind of goes to your point there. It's paragraph 26 of that decision, and it says, Here, plaintiff offered the testimony of her chiropractor, who testified that her injuries were consistent with the type of accident she described and that her delay in treatment was not unusual given her tender years and her belief the symptoms would disappear. Defendant offered no medical evidence to the contrary. Given the evidence, it is difficult to imagine how the inference could be drawn that plaintiff did not actually suffer any injury due to defendant's negligence. But it may be possible the jury did not find the chiropractor credible or plaintiff credible, especially in light of plaintiff's 87-day delay in treatment, her statements immediately after the accident that she was not hurt, and her continuation in numerous sports-related activities. However, because the record before us is clear that defendant's negligence was the proximate cause of the accident and plaintiff was not contributorily negligent, the instant case must be reversed and remanded with directions to enter judgment in favor of the plaintiff on the issue of liability and to hold a new trial on the issue of plaintiff's damages only. So I think that that case, I think that that concisely and appropriately applies to this case because it could have been that they didn't believe my client or that they didn't believe Dr. Fisher or they didn't believe Dr. Gornett, but we don't know that because the defense was allowed to submit this general verdict form that just simply says we find in favor of the defendant and against the plaintiff and offering no other lines for any other awards of damages. So I truly think that this case applies to Mr. Claro's case, and he should at least be given a new trial on the issue of damages. And by the way, I asked Dr. Fisher on the issue of the delay in my client's care and treatment. I asked him on the stand, I said, is that something that you see in your practice, people, you know, waiting to come to see you after they get hurt in some way, in an accident or be it some other manner? And he said, absolutely. He said, I wish I had a dollar for every time that that happened, that a client came or a patient came to me just thinking that they would get better, but when they didn't, they finally had to seek care and treatment. And he said, that's absolutely what Larry did in this case. And that's also what my client testified to. He said, yeah, I just kept working and I kept doing the things that I was normally doing, and when that became difficult for me, I had to seek medical care and treatment. And that's what he did. So, Your Honors, I think that at the very least my client deserves a new trial on the issue of damages. And I would ask that you direct the verdict in favor of my client. And the way to do that, I think, is to remand the case with instructions that this verdict form specifically state, there would only be one verdict form allowed, and that the verdict form specifically state we find in favor of the plaintiff, and then add the different lines. You understand in order to do that, we would be directing a verdict on the issue of proximate cause? Right. And, of course, part of your appeal here is you're playing the trial court error by not doing that. Yes, exactly. And when you look at just all of the evidence that I've mentioned, it comes down in favor of my client. There's no contrary evidence other than some speculation about a herniated disc 13 years ago that was cleared up by Dr. Fisher and my client that supports the finding in favor of the defendant on the issue of proximate cause in this case. There's just simply not anything else. So, unless you have any other questions for me, I think that... I don't think so, Counsel. Okay, I'll reserve the rest for rebuttal. Thank you. All right. Argument for the appellee. May it please the Court. Dan Bradley on behalf of Appellee Shirley DeLong. What this Court is being urged to do is first substitute plaintiff's judgment for that of the jury and the trial judge, Judge Lopino. Shift the burden to prove proximate cause did not occur as opposed to having the plaintiff have the burden. Forcibly have defendant, number one, obtain an expert in every case regardless. Let's talk about proximate cause for a minute. You introduced no evidence of proximate cause. I would disagree with that respectfully, Your Honor. Are we talking about the reference in Dr. Fisher's notes? I am not, sir. Okay. If I may, I want to approach proximate cause in two issues. Before we get there, let's back up because you in your brief say in this case defendant did not deny liability. That's correct. There's a difference between admitting liability and admitting negligence. Do you agree with that? I do agree with it. Because if you admit liability, you're admitting proximate cause. You're saying I'm liable for this accident, and the only thing left is to award damages. But what you did is only admit negligence. Yes, we admitted the defendant negligently operated a motor vehicle and caused the occurrence. And so your argument was about proximate cause, whether or not he was injured as a result of this negligence. That's correct. And in approaching that, I would like to do it in two ways. First, if the opinions of Dr. Fisher and Dr. Gornath are at issue here, both testified, my opinion is based on the history provided to me by the plaintiff. That history included a motor vehicle accident in which he was rear-ended by another vehicle which traveled at 15 to 20 miles per hour. Well, that was called into question by the defendant's testimony that she completely stopped behind him for a matter of time and then rolled, as was just stated, into the rear. Now, that's supported by further evidence from the plaintiff that there was no debris on the road, there was no plastic on the road, there was no evidence there was even an accident, there was a small paint transfer. So his test or his history to those from whom he relied on opinions was called into question, giving the jury certainly an ample reason to question those opinions because both doctors testified. We relied on his history, and then Dr. Gornath further testified, I form my causal opinion after my first treatment with Mr. Claro, which occurred many months after the accident, based on the history he provided to me. So Mr. Claro's history regarding the motor vehicle accident is in question. Mr. Claro was observed after the accident, walking about the scene in no apparent distress, indeed refused treatment and, as stated, waited 33 days before any medical treatment. Mr. Claro then complained of pain, which he rated as a 10 out of 10 worst pain imaginable, yet Dr. Fisher, the chiropractor, conceded I cannot prescribe medicine, I always refer people out that it's necessary. He did not do so in this case. He treated him for four months while in person and supposedly had the worst pain permissible. Does that affect the jury's assessment of his credibility in his testimony? Most certainly. Dr. Gornath sees him for the first time at which he forms his opinion based on the history without the benefit of the MRI, which is Dr. Gornath's testimony. Dr. Gornath reviews x-rays and states, plaintiff suffered from degenerative disc disease at these levels and disc height loss, which Dr. Gornath stated was in no way related to the motor vehicle accident and not caused by the accident, at the same level. Just a minute, though, we're talking about apples and oranges here. I mean, Dr. Gornath did testify that his neck injuries were caused by this accident. That was his opinion. But he had also offered an opinion regarding his x-rays, which he had before the MRI, that it was not related. And then he affirmed that his degenerative disc disease was not related. At the same levels. That's correct, sir. Okay. And then, of course, he obtains an MRI, but not. He treats him until November 13. Then there's a 15-month gap without any treatment with Dr. Gornath. Fifteen months. He goes back to Dr. Gornath within two months of trial. Now we have a disc herniation. Now it's caused by a motor vehicle accident. But Dr. Gornath, in his deposition testimony, which you have a copy, concedes that we did have this degenerative condition and that this herniation can be caused by, well, as he put it, anything more than a disc and handle. But it certainly can be caused by age-related, from simple age-related, or occupation-related. And that the previous testimony, when you combine regarding the disc degeneration, which certainly can result in herniation, which Dr. Gornath conceded was not related and wasn't, as Dr. Gornath stated, age-appropriate, occupation-appropriate, that gives the jury the medical basis to make that determination, combined with some missteps plaintiffs may have made about the veracity in the report of the accident. For instance, at trial, Mr. Kvarner testified, during the accident, my head struck the seat and went back and forth, which I immediately, on his deposition testimony, which he stated, no, that did not happen. So he had conflicting testimony that he presented to the jury. He had conflicting testimony, if the defendant's testimony is to believe, combined with the circumstantial evidence, that the accident did not occur in the manner in which he stated. The medical evidence was clear, and of course Dr. Fisher agreed with Dr. Gornath regarding the disc, degenerative disc disease and disc desiccation at those levels were age-related. And both conceded that Mr. Klarow's work as a 40-year-plus auto mechanic would certainly and could certainly have resulted in the exact same conditions. And even Dr. Fisher went on to say that Mr. Klarow's job performance is very taxing on the cervical spine. Now, plaintiffs brought up the case of Wiggins, which I want to address, and of course we have the author of the opinion here. But my take on that Wiggins case is, and Justice Goldhurst, with respect, I think that you indicated there were maybe more but at least four reasons in which the jury may have found for the defendant. Number one, on the contributory negligence issue, then the delay in treatment, plaintiff's statements after the accident that she was fine, and then her sports-related activities. And to me, the point of the case is, here are four reasons in which the verdict may have been for the defendant. One impermissible reason, contributory negligence, and three valid reasons, as stated. Since we don't know whether the jury based their verdict on an impermissible reason, we remanded. But here that's not an issue because the defendant admitted negligence. There was no contributory negligence in the jury instructions asserted. The jury instruction tendered and proffered to the jury was Illinois pattern jury instruction based on the fact that the jury could examine this evidence, the discrepancies in plaintiff's stories, the medical delay, both initially and in a 15-month gap with Dr. Dornett, and come to the conclusion that based on his history, the discrepancies in the stories, that there was no proximate cause from this motor vehicle accident, given the nature. So I think there is ample evidence in which the jury rendered its verdict. And I would point out, as we all know here and as pointed out by Justice Goldenhirsch in his opinion, the reviewing court and the trial court cannot substitute its opinions for the jury's, just because they may have reached a different conclusion, or because maybe they even disagree with the conclusion. We have a jury verdict and a jury process for a reason. That was done here. Judge Lofedo handles the trial. He examined the post-trial motion. It's been reviewed by him. The standard for the court manifests weight of the evidence and manifests weight with deference. I don't think the plaintiff has met that burden. I would also just point out that what you're being urged to do here is to encourage the rewriting of the Illinois pattern jury instructions, so a jury has to explain why they give a defense verdict. But there's no support for that in the law or in cases. I don't even believe that Wiggins' case would have required that of the jury. All it would have required is they cannot fine the defendant for an impermissible reason. I don't think the argument here is they should have never been given a defense verdict, period. The argument is that the trial judge should have granted a directed verdict on the issue of liability. I understand the proximate cause of the issue, Justice Stewart, and I agree that that's the ultimate argument. But that has already been assessed by the jury and their credibility. Judge Lofedo has already made that determination that there was sufficient evidence. And the argument is that Judge Lofedo was wrong for not directing a verdict. But as stated in our briefing and in the argument here, there's ample evidence, both factually, the reliance on the misstated, misremembered facts for the opinions, the time the opinions were rendered, and medically speaking, based on the other options given to the physicians which may have caused this. This was presented to the jury, which we know to be the ultimate judge of credibility of the witness, the ultimate judges of credibility and factual determination, which they've done. To now come here to substitute that, to throw that out, does a disservice to the process, and further to require some new verdict form in which the jury must say, we found in favor of defendant because A, B, and C. It's just simply not required. They didn't find proximate cause. They were issued the instructions appropriately, and they returned their verdict. And we should respect that verdict. What about this issue of Dr. Fisher's records referring to a prior, and you must have argued that to the jury. What I presented was a question to Dr. Fisher, who testified live without discovery deposition prior. In Dr. Fisher's notes, and I believe it was in, I don't know if the section was specifically entitled history, but that was certainly the area of where he might have taken that. He, Dr. Fisher, had written prior herniated disc. It did not say prior lumbar herniated disc. It did not say prior cervical. It said prior herniated disc, and I asked Dr. Fisher. It was under some portion talking about his neck, and I take it argued before the jury, just like you did in your brief, that that's some kind of evidence that he might have already had a herniated disc. I specifically asked Dr. Fisher, and Dr. Fisher said, no, that was in his lumbar spine. And I said, well, Dr. Fisher, it doesn't say that, does it? And he, of course, said no. And I said, well, then how do you know? And Dr. Fisher said, I remember that conversation, which had occurred some two years prior. And you argued to the jury he probably couldn't have remembered that, right? Well, I think that's true. Here's my question. Did you, in discovery, get any prior medical records on the plaintiff? We did not because the plaintiff, in his deposition, denied that he had ever suffered any type of preexisting condition to the spine, which would not have allowed us to just go and obtain blank records without any basis. So you don't know whether he had a prior herniated disc or if he did wear as far as any medical records? Well, as I stated, the medical record for Dr. Fisher, which we questioned him about, and then plaintiff's testimony. But I would add to that. Again, I understood from your opposing counsel that the plaintiff testified that he did have a prior herniated disc, only it was in his lower back. He was allowed to offer that testimony, yes. He was never required to offer any testimony. I mean, the reason I'm asking is it seems to me like this is an issue that could have been resolved prior to trial. So, I mean, you had no basis either way about whether he did or did not have a prior herniated disc. Yet, you know, you argued this to the jury that that's something they could seize upon as proof that the herniated disc he has now came from some other cause. Well, I questioned Dr. Fisher on it. Dr. Fisher's records indicated it. And then when Dr. Fisher testified that he recalled the conversation with one patient, which occurred two years prior, I asked the jury to assess the credibility of whether or not Dr. Fisher could really make and recall a conversation which had occurred some years prior. Well, why did you do that? You argued that credibility so that they would think he couldn't remember. That might have been a herniated disc in his neck. That's what you were doing. No, I'll tell you exactly why. Because Mr. Pleurer testified I had no back problems from this accident. He did so in his discovery deposition. He did so live testimony. But Dr. Fisher treated, or at least Dr. Fisher's records stated I treated him for a low back. And there were more than one instance, multiple instances, where Mr. Pleurer, in the medical records, Dr. Fisher stated I treated him for a low back. I performed chiropractic services for his low back, which Mr. Pleurer denied. And it was really to bring out the, is Dr. Fisher, the credibility of Dr. Fisher when he causally relates something is in question. He's treated a man for his low back, according to him and his records, where the plaintiff has said no, that did not occur. So it was really about the veracity of Dr. Fisher and his opinions. Which the plaintiff, I would like to say, agreed. I did not. He stated no low back injury from a motor vehicle accident with Mr. Long. I didn't get any treatment. Yet Dr. Fisher said that I did treat him. So that was the purpose of that, is to say, is Dr. Fisher, you assess his credibility, Jerry, that's your problem. Here's why you may want to think about that. So you weren't trying to suggest to the jury that he already had the herniated disc that was testified about by Dr. Gornett? My goal was to say to the jury, here's a possible, the statement was possible herniated disc. All that was testified, or I'm sorry, all that was written in Dr. Fisher's notes related to the cervical spine. There was no mention of a lumbar problem. There was no mention of a lumbar complaint. And the plaintiff said, I have none. So we were told in that position no prior injury. The possible herniated disc, all related to this, what was it, how do you know, Dr. Fisher, you wrote it underneath this where he talked cervical. How do you know where the herniated disc was? Well, it was lumbar because he told me. And when you asked those questions, you didn't know whether he had a prior cervical herniated disc because you didn't get any records? Or lumbar because he said he had no prior problems. That's correct. Right. So this is all speculation. Well, it wasn't speculation to the extent the entry was there and said possible herniated disc. That's not speculation. That was in the medical record under a section prior. Herniated disc. Prior. That was in the record. So it was questioned to Dr. Fisher. He provided an explanation. My argument was, is it a correct explanation based on the fact that his other testimony may have been a little suspect because he said that he had treated plaintiffs lower back when the plaintiff said no, that did not happen. So that suspect is his opinion suspect. I would urge this Court to use the same deference with which Judge Lopeno did in ruling on the post-trial motion and recognize that we have a jury process for a reason. The plaintiff presented their case and the jury rendered its verdict, which I think that we would all agree is still a sacred thing. It should not be overturned absent extraordinary circumstances. So if the panel has no further questions. Thank you, Counsel. We've got an argument? Yes. I agree with Mr. Bradley that juries do the best they can with the evidence that's given to them. But the problem with that is when they're given bad instructions, sometimes that can lead them to render a verdict that is against the manifest way of the evidence or incorrect. And here's where I think the problem occurred. Here's what the jury was instructed with regard to the defendant's admission that she was negligent. The defendant has admitted she was negligent. You need only decide what amount of money will reasonably and fairly compensate the plaintiff for those injuries. And that's the instruction you give when the defendant submitted liability. Right. And that's what was given to the jury here. Right. That's what was given to the jury here. So my point is, Your Honor, they should never have been given that verdict form C. Well, it's inconsistent with that instruction. Correct. For sure. Correct. That's my point. Or maybe they shouldn't have been given the instruction you just read. Well, that one wasn't objected to. That was given to without objection by either party. So in conclusion, I think I would just like to say that, you know, all of the points that Mr. Bradley made about what the jury may have been relying on or what they may have thought about evidence that was put on, the problem with that is we just simply don't know. And in the Wiggins case, you said, well, we don't know. In that case, the plaintiff gets a new trial on the issue of damages when that happens. And I think that that's exactly what my client is entitled to in this case. He's entitled to trial on a new issue or a new trial on the issue of damages only because of the evidence that was submitted. With regard to a couple of things that Mr. Bradley brought up in his arguments, what's interesting about the prior herniated disc issue is that, you know, even supposing that my client had a prior herniated disc, what they found in his neck, which Dr. Gornett and Dr. Fisher both testified was a result of this accident, was two herniated discs in his neck, not just one. So even supposing that he had one that was there before, even if it was in his neck, which there was no evidence that it ever was, that there's now two. That's a change. And both of them testified that that was a result of the accident. With regard to the discrepancies between plaintiff and defendant's testimony about after the accident, Mr. Bradley testified that the defendant said, well, the plaintiff looked fine after the accident. He didn't appear that he was injured. My client admitted that at the time of trial. He said, yeah, I thought I would be okay. But it was only after a couple of weeks went by, the days and weeks, that I started to notice that I was having these issues. So I think that that's a red herring that's been thrown in at you because my client testified to that. He fully admitted that was not at issue in the trial. So that would not have been a basis for the jury to rule against my client in this case. So, again, I would strongly urge the court to look at the Wiggins case. I think it's very similar to this case and grant my client a new trial on the issue of damages only, unless you have any other questions. I don't believe so. Thank you, Counsel. We'll take this case under advisement. Thank you very much. We're going to take a short recess and then proceed with the next case, the 11 o'clock case. Court will be at recess. Thank you.